UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

MICHAEL B. FLANIGAN,          )
                                    )
        Petitioner,                )           Civil No. 10-111-GFVT
                                    )
V.                                 )
                                    )
ERIC WILSON,                 )         **MEMORANDUM OPINION**
                                    )              **AND**
        Respondent.           )            **ORDER**
                                    )

**** **** **** ****

       Michael B. Flanigan is incarcerated at the United States Penitentiary - McCreary in Pine Knot, Kentucky.  Flanigan has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  [R. 1.]  Having reviewed the petition,[1] the Court must deny relief.

       On July 28, 2005, Flanigan pled guilty to conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 846, and was sentenced to a 262 month term of incarceration, with credit for time already served on the charge.  *United States v. Flanigan*, No. 3:05-CR-179-RLW-1 (E.D. Va. 2005).  He challenges various disciplinary

---

[1]  The Court conducts a preliminary review of habeas corpus petitions.  28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520, 2002 WL 31388736, at *1 (6th Cir. Oct. 22, 2002).  Because the petitioner is not represented by an attorney, the petition is reviewed under a more lenient standard.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  At this stage the Court accepts the petitioner's factual allegations as true and his legal claims are liberally construed in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Once that review is complete, the Court may deny the petition if it concludes that it fails to establish grounds for relief, or it may make any such disposition as law and justice require.  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

sanctions imposed by the Bureau of Prisons as a result of numerous Incident Reports issued
between 2006 and 2008.  The Court will address these events in chronological order.

## I.

On August 31, 2006, while in his cell at the Federal Correctional Institution in
Petersburg, Virginia, Flanigan became angry and verbally abusive to Unit Manager Joseph when
Joseph told him that he had not yet received a response to an informal grievance that Flanigan
had filed.  When Flanigan called Joseph a liar, officer Joseph turned and began to walk away.
Flanigan escalated his tirade, now speaking loudly in Spanish, calling Joseph names, banging
and kicking the cell door, and threatening to assault Joseph.  Joseph, who understands Spanish,
walked back to the cell and spoke further to Flanigan.  As a result of the incident, Flanigan was
charged with Threatening Another Person with Bodily Harm (a Code 213 offense) and Insolence
Towards a Staff Member (a Code 312 offense) in Incident Report 1508008.  [R. 1-2 at 10.]

On October 18, 2006, Flanigan was given written notice that a disciplinary hearing
officer ("DHO") would hold a hearing on the charges, and advised him of his rights.  [R. 1-1 at
33.]  On that form, Flanigan indicated that he wished to call several witnesses at the hearing and
requested that a staff member represent him.  [R. 1-1 at 32.]  Before the hearing, Flanigan asked
his staff representative to obtain written statements from two prisoners and one staff member
who observed the event to present at the hearing, which he did.  [R. 1-1 at 35.]

On December 6, 2006, a DHO conducted a hearing on the charges.  At the hearing,
Flanigan waived his right to call witnesses, which was noted on the "notice of hearing" and
witnessed by his staff representative.  [R. 1-1 at 33.]  Flanigan testified that he did call Joseph a
liar but denied ever threatening him.  [R. 1-1 at 33.]  Flanigan's staff representative presented the

written statements obtained from the three individuals in lieu of their live testimony.  Case Manager Malone testified that she heard noise and banging from Flanigan's cell, but did not know what was said.  Inmate Jimmy Lee testified that Flanigan called officer Joseph a liar and uttered numerous expletives.  Inmate Wilkins testified that Flanigan yelled angrily at officer Joseph, and after he left, Flanigan told Wilkins that he did not know that Joseph spoke Spanish. [R. 1-1 at 35.]  On December 11, 2006, the DHO issued a report concluding that Flanigan had spoken in Spanish to mask the threats contained in his statements, and found him guilty of both charges.  The DHO suspended some privileges, and ordered forfeit 40 days of Good Conduct Time ("GCT").  [R. 1-1 at 36.]

On December 17, 2006, Flanigan appealed that decision by filing a Form BP-230 with the Mid-Atlantic Regional Office ("MARO"), which the BOP assigned Remedy ID 438402. [R. 1-1 at 28.]  Flanigan requested that Lee's statement be stricken because Lee was on psychiatric medication, noted that Malone did not testify that he had threatened Joseph, and complained that Joseph did not explain in the original incident report that Flanigan's statements had been made in Spanish.  On January 4, 2007, MARO rejected the appeal because Flanigan was in the process of being transferred to another institution, but advised him that he should "[f]ile [his] appeal within 20 days of arriving at [his] designated facility with the proper regional office." [R. 1-1 at 31.]

Flanigan arrived at the Federal Correctional Institution in Edgefield, South Carolina, at some time between January 25, 2007 and February 14, 2007.  [R. 1-1 at 30.]  However, he did not resubmit his appeal until May 25, 2007, approximately four months later.  [R. 1-1 at 29.]  On June 6, 2007, the Southeast Regional Office ("SERO") rejected Flanigan's appeal because it was

not timely filed.  The notice advised Flanigan that the late filing could be excused if he could

"provide staff verification on BOP letterhead that [he] [was] not responsible for the untimely

filing of this appeal."  [R. 1-1 at 29.]

On June 19, 2007, Unit Manager Mahomes provided Flanigan with a letter stating "the

filing of the remedies were untimely due to no fault of his own as he was housed in the Special

Housing Unit and did not have access to certain personal property he needed to completely file

the remedies."  [R. 1 at 17.]  On June 26, 2007, Flanigan resubmitted his appeal, presumably

with this correspondence.  However, on July 2, 2007, SERO again rejected the appeal as

untimely.  In doing so, in the "Remarks" section, SERO noted that the appeal was "untimely

from 02-14-07 to 05-25-07."  [R. 1-1 at 30.]

On July 24, 2007, Flanigan appealed that rejection to the BOP's Central Office of

Administrative Appeals by filing a Form BP-231.  In his appeal, Flanigan asserted that he had

complied with MARO's January 4, 2007, directions because he did not receive his personal

property until May 17, 2007, and reiterated his claims regarding the deficiencies in the DHO

hearing.  [R. 1-1 at 26.]  On August 3, 2007, the Central Office rejected Flanigan's appeal as

untimely, agreeing with SERO's rationale for doing so.  [R. 1-1 at 27.]

In his petition, Flanigan asserts that he was not permitted to call Case Manager Malone or

inmate Wilkins as witnesses during the hearing, and that the DHO "influenced" the testimony of

Unit Manager Joseph because "there is no [Spanish] translation for what Joseph wrote in body of

report," in violation of his due process and equal protection rights.  [R. 1 at 15, 21, 22.]

As a threshold matter, Flanigan failed to properly exhaust this claim.  A prisoner must

exhaust his administrative remedies within the BOP before he may seek habeas relief under

Section 2241.  *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006).

This is necessary both to give the agency the first opportunity to correct its own mistakes and,

should the disagreement persist, to provide a reviewing court with a complete and an adequate

record to review the agency's actions.  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  In order to

ensure that the agency has the opportunity to review the *substance* of the action in question, the

petitioner is required to have fully and strictly complied with the agency's rules for processing

challenges to its actions, such as deadlines and filing requirements.  *Woodford*, 548 U.S. at 88.

Flanigan plainly failed to do so here.  A challenge to a disciplinary decision is filed

directly at the regional level within 20 days of the DHO's decision.  28 C.F.R. § 542.14(a),

(d)(2).  Flanigan timely filed his initial appeal, but did not follow MARO's clear direction that he

resubmit his appeal within 20 days after his arrival at FCI-Edgefield in February 2007.  Instead,

he waited until after he received his personal property in May 2007 before resubmitting his

appeal.  To the extent Flanigan believed that he needed materials in his personal property to file

his appeal, he could have requested an extension of time to file the appeal (*see* 28 C.F.R.

§ 542.14(b)), but he neither sought nor obtained one.  Furthermore, having already submitted an

appeal only one month earlier, Flanigan was aware of the grounds upon which he wished to

challenge the decision.  Possession of substantial documentation was simply not necessary to

pursue his appeal.  The grounds were primarily factual, rather than legal, in nature and were not

complex.  Flanigan's implicit suggestion that it was necessary for him to have his personal

records before he could re-file his appeal is therefore not plausible under these circumstances.

Even if Flanigan had administratively exhausted this claim, it would fail on the merits.

When a prison disciplinary board takes action that results in the loss of good time credits in

which the prisoner has a vested liberty interest, the Due Process Clause requires prison officials

to observe certain protections for the prisoner.  Specifically, the prisoner is entitled to advanced

notice of the charges, the opportunity to present evidence in his or her defense, whether through

live testimony or documents, and a written decision explaining the grounds used to determine

guilt or innocence of the offense.  *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

Additionally, the board's findings used as a basis to revoke good time credits must be supported

by some evidence in the record.  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Flanigan's claim that he was not allowed to call Case Manager Malone or inmate Wilkins

is flatly contradicted by the record.  Flanigan waived his right to call them as live witnesses at

the hearing, an act noted in the record and acknowledged by his staff representative.  The DHO's

report also summarizes the testimony of these two witnesses as conveyed in written statements

obtained at Flanigan's request by his staff representative.  [R. 1-1 at 33, 35-36.]

Flanigan also contends that the DHO "influenced" the testimony of officer Joseph.  [R. 1

at 21.]  The basis for this claim is unclear, but it appears to be based upon the fact that while

Joseph characterized Flanigan's statements in Spanish to the DHO as "threatening," he had

previously described them to Malone as merely "bad Spanish."  [R. 1-1 at 28.]  Flanigan also

asserts that the testimony of inmate Lee should be discounted or ignored because he was on

"psychiatric medication."  [R. 1 at 15.]  These grounds challenge, in essence, the sufficiency of

the evidence used to find him guilty of the charge.  When determining whether a DHO's decision

is supported by "some evidence," the Court does not conduct an independent review of the

evidence or assess the credibility of witnesses.  It asks only "whether there is *any* evidence in the

record that *could* support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at

6

455-56.  To meet that minimal standard the DHO needed only to point to the statement of the reporting officer that Flanigan heatedly swore at him in Spanish while kicking the bars of his cell.  That statement provided some evidence to support the DHO's finding of guilt consistent with Flanigan's procedural due process rights.

On March 20, 2007, shortly after his arrival at FCI- Edgefield in South Carolina, Flanigan was speaking with the warden regarding several grievances that he had filed that had been rejected by the warden's office.  While Flanigan suggests he remained calm during the conversation, the warden told him that he was going to be placed in segregation for insolence. Flanigan remained in segregation for approximately 25 hours before he was released, and no disciplinary charges were filed against him arising out of this incident.  Flanigan asserts that the warden placed him in segregation in retaliation for exercising his right to file grievances.  [R. 1 at 24, 27, 30.]

First, the grievance documents filed by Flanigan make clear that he failed to timely and properly exhaust this claim.  Instead of attempting to informally resolve the claim and filing a Form BP-229 with the warden within 20 days as required by 28 C.F.R. § 542.13(a), .14(a), Flanigan filed a "Sensitive" Form BP-230 with SERO on April 12, 2007, which was rejected as procedurally improper on April 18, 2007.[2]  [R. 1 at 23.]  Flanigan re-filed his grievance with the warden on May 4, 2007.  [R. 1 at 27.]  The grievance was rejected on May 10, 2007 for failure to seek an informal resolution as required by 28 C.F.R. § 542.13(a).  [R. 1 at 25.]  Instead of curing this defect, on May 18, 2007, Flanigan sent a letter to SERO resubmitting his BP-230, which was again rejected on June 6, 2007 as premature pending a determination by the warden.  [R. 1 at 26,

---

[2]  An inmate may make an initial filing at the regional level only where "the inmate reasonably believes the issue is sensitive and the inmate's safety or well being would be placed in danger if the Request became known at the institution."  28 C.F.R. § 542.14(d)(1).

28.]  On July 12, 2007, Flanigan filed another Form BP-230 with SERO [R. 1 at 24] which

SERO again rejected on July 25, 2007 on the same grounds.  [R. 1 at 29.]  Flanigan appealed to

the BOP's Central Office on August 10, 2007 [R. 1 at 30], which rejected the appeal on August

27, 2007 on the same grounds articulated by SERO in its prior denials.  [R. 1 at 31.]  Because the

issues raised in the grievance were not sensitive, Flanigan was required to follow the normal

filing and appeal process set out in 28 C.F.R. § 542.12-.15, something he repeatedly refused to

do.  Having failed to follow the BOP's inmate grievance process, his claim remains unexhausted.

*Woodford*, 548 U.S. at 88.

Second, a claim of retaliation is not cognizable in a habeas proceeding, and instead must

be pursued in a civil rights action.  *Davis v. Zuercher*, No. 08-CV-207-KKC, 2009 WL 585807,

at *5 (E.D. Ky. Mar. 6, 2009), *aff'd*, No. 09-5398 (6th Cir. Dec. 16, 2009) ("the district court

properly dismissed Davis's claims of retaliation and discrimination because those claims do not

challenge the execution of his sentence and are therefore not cognizable under § 2241."); *see

also Smith v. Sniezek*, No. 4: 07-CV-366, 2007 WL 642017, at *3 (N.D. Ohio Feb. 27, 2007);

*Taylor v. Caruso*, No. 2: 08-CV-103, 2009 WL 199198, at *1 (W.D. Mich. Jan. 26, 2009)

("Claims of retaliation are properly asserted in the context of a civil rights action filed pursuant

to 42 U.S.C. § 1983, and not in the context of a § 2241 action.").  The Court therefore lacks

subject matter jurisdiction to entertain this claim.

On the morning of March 22, 2007, just having been released from segregation from the

prior incident, Flanigan was in the laundry area being issued new clothing.  Flanigan asked

officer Perry to replace an old towel, but Perry replied he could not do so because the towel was

not issued by the laundry.  Flanigan then became upset and walked passed a gate towards an

office area, restricted to staff members only.  When Flanigan approached Perry's office in an

aggressive manner and demanded that the towel be replaced, Perry told Flanigan that he was "out

of bounds" and to get back behind the gate.  Flanigan refused and stated he would not leave until

he got what he wanted.  Flanigan refused two more direct orders to leave the area, and called

officer Perry a "weak punk."  After being escorted to the lieutenant's office, Flanigan was

charged with refusing to obey an order (a Code 307 offense) in Incident Report 1580054.  [R. 1-

2 at 7.]

The UDC then referred the charge to a DHO for resolution.  A hearing was conducted,

but was adjourned when officer Windham - a witness requested by Flanigan - was unavailable to

testify.  A re-hearing was then held on June 28, 2007, where Windham testified that when he saw

Flanigan, officer Perry was walking directly behind Flanigan, as if he were escorting him.  [R. 1-

1 at 10.]  In his July 12, 2007 report, the DHO determined that the reporting officer's statement -

that Flanigan refused three direct orders to leave the area - supported the charge.  The DHO

found Flanigan guilty and imposed various sanctions, including the disallowance of 13 days

GCT.  [R. 1-1 at 10.]

On July 17, 2007, Flanigan appealed that decision to SERO in Remedy ID 461303,

asserting that he was not given 48 hours notice prior to the DHO hearing, that he was not

allowed to review the surveillance videotape of the incident, and that he never entered a

prohibited area.  Flanigan contends that SERO denied his appeal on September 5, 2007.  [R. 1 at

13.]  Flanigan appealed to the Central Office on September 23, 2007, reiterating these claims and

asserting that the conviction violated his rights under the Double Jeopardy Clause of the

Constitution.  [R. 1-1 at 12.]  On November 28, 2007, the Central Office denied his appeal,

noting that SERO had not denied his appeal, but had granted it in part and remanded the matter

back to the DHO for a new hearing, which had been held in the interim on October 11, 2007.

[R. 1-1 at 13.]

On December 19, 2007, Flanigan filed a new appeal to SERO, assigned Remedy ID

477416, again challenging the conviction on the ground that it constituted double jeopardy and

that he was not allowed to review the surveillance videotape or present its contents as

exculpatory evidence.  [R. 1-1 at 7.]  On December 28, 2007, SERO rejected the appeal because

the DHO had yet to issue a written decision on the charges.  SERO directed Flanigan to wait

until a decision was issued by the DHO, and then file an appeal within 20 days.  [R. 1-1 at 6.]

However, Flanigan did not file a renewed appeal of the DHO's decision upon remand until

February 8, 2008, which SERO rejected on February 19, 2008, as untimely.  [R. 1-1 at 5.]

Flanigan has not provided any further documentation of his efforts to pursue the inmate

grievance process.

It is clear that Flanigan failed to administratively exhaust this claim.  The DHO

conducted a rehearing following remand from SERO on October 11, 2007, but Flanigan did not

wait until the DHO issued his decision before appealing to SERO a second time on December

19, 2007.  SERO properly rejected this appeal as premature.  While the first appeal was filed too

soon, the second (filed on February 9, 2008) was apparently filed too late, as it was outside the

20-day window SERO advised Flanigan of in its prior rejection.  [R. 1-1 at 6]  Flanigan has not

indicated that he appealed that rejection to the BOP's Central Office and has not provided

documentation that the DHO's decision was ever reviewed on the merits during the

administrative appeal process.

10

Flanigan's claims are also substantively without merit.  With respect to Flanigan's assertion that he should have been allowed to present a videotape from the surveillance cameras as exculpatory evidence, a prison surveillance videotape allegedly containing exculpatory footage need not be presented at a hearing or reviewed by a disciplinary hearing officer in order to satisfy the "some evidence" standard needed to uphold a disciplinary conviction.  *Davis v. Zuercher*, No. 08-CV-207-KKC, 2009 WL 585807, at *3 (E.D. Ky. Mar. 6, 2009) (collecting cases), *aff'd*, No. 09-5398 (6th Cir. Dec. 16, 2009); *see also Hadden v. Mukasey*, No. 07-CV-7909, 2008 WL 2332344 (S.D.N.Y. Jun. 3, 2008); *Campbell v. Holt*, No. 11-1921, 2011 WL 2260576, at *2 (3d Cir. Jun. 8, 2011) ("the existence of alleged videotape surveillance footage that might have been helpful to Campbell's defense does not nullify the conclusion that the DHO decision was supported by 'some evidence.'").  As in *Davis*, the DHO here relied upon officer Perry's statement that Flanigan had repeatedly refused to comply with an order.  Perry's statement provided sufficient evidence to satisfy due process concerns.

With respect to Flanigan's Double Jeopardy argument, Flanigan has offered no explanation of how he is being punished twice for the same conduct, and his claim therefore lacks a clear factual basis.  As a purely legal matter, the "traditional rule [is] that prison disciplinary sanctions do not trigger the protections of the double jeopardy clause."  *Porter v. Coughlin*, 421 F.3d 141, 144 (2d Cir. 2005); *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008) ("Every circuit court of appeals to consider this question has given the same answer: The Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct.").  Flanigan's claims must therefore fail on the merits as well.

On April 18, 2007, during a routine cell rotation, officers directed Flanigan to pack his things to move to a different cell.  At approximately 2:00 p.m., Flanigan claims that the guards refused to allow him to bring a cane he was using to assist in movement because of a torn ligament.  [R. 1 at 34.]  When he insisted that he needed the cane to move, he was issued Incident Report 1590246 charging him with Refusing to Work or to Accept a Program Assignment (a Code 306 offense).  A copy of the charge was delivered to him on April 19, 2007.  On April 23, 2007, the Unit Disciplinary Committee (UDC) found him guilty of the offense.  [R. 1 at 35.]  Flanigan alleges he lost GCT as a result of the finding.  [R. 1 at 9.]

On August 10, 2007, Flanigan appealed this disciplinary conviction to SERO in Remedy ID 451901 on the grounds that he could not move without the assistance of his cane and that the Incident Report was not delivered to him within 24 hours as required by policy.[3]  [R. 1 at 12.]  SERO denied the appeal on September 17, 2007.  Flanigan appealed to the Central Office on October 6, 2007, asserting the same grounds.  [R. 1 at 34.]  On January 7, 2008, the Central Office denied the appeal, concluding that the reporting officer's statement that Flanigan refused to comply with his order to move was sufficient evidence to support the conviction, and that a minor delay in receiving the Incident Report did not prejudice Flanigan's ability to defend against the charge.  [R. 1 at 35.]

As a threshold matter, Flanigan's assertion that he lost GCT as a result of this disciplinary conviction [R. 1 at 9] is likely incorrect.  While a Code 306 offense can result in the forfeiture of non-vested GCT, "[o]nly the DHO can take action to disallow good conduct time. A UDC may recommend a disallowance to the DHO, but a UDC may not independently disallow good

---

[3]  The record does not disclose why Flanigan delayed nearly four months before filing his appeal.  Because the BOP denied the appeal on the merits, the Court need not consider it here.

conduct time." *See* BOP Program Statement ("PS") 5270.07, Ch. 4, Pg. 10; Ch.4 Appx. Pg. 1

(2000). The UDC may only impose "minor sanctions," identified as sanctions "G" through "P,"

PS 5270.07, Ch. 6, Pg. 3, which for Category III offenses involve actions such as the loss of

commissary privileges or assignment to extra work duty. PS 5270.07, Ch. 4, Pg. 11. The

forfeiture of GCT is sanction "B", PS 5270.07, Ch. 4, Pg. 10, and "[o]nly the Disciplinary

Hearing Officer shall have the authority to impose or suspend sanctions A through F." PS

5270.07, Ch. 7, Pg. 1 (*quoting* 28 C.F.R. § 541.16(c)). While the loss of GCT clearly constitutes

the kind of "atypical and significant hardship" which implicates the protections of the Due

Process Clause, the lesser sanctions which the UDC may impose generally do not. *Cf. Turner v.*

*Wilkinson*, 20 F. App'x 329, 330 (6th Cir. 2001) ("Since Turner does not allege that he was

denied good time credits, the due process afforded by *Wolff* is not applicable.") However,

because Flanigan has not provided the Court with either the Incident Report itself or the UDC's

resolution of the charge, the Court will assume his allegation that he lost GCT is correct.

Nonetheless, it is clear that no constitutional violation occurred. Flanigan alleges he did

not move as ordered because he feared for his safety if he tried to walk without his cane. [R. 1 at

18.] In determining whether the UDC's conclusion to the contrary violated the Due Process

Clause, the question is simply "whether there is *any* evidence in the record that *could* support the

conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Here, the UDC relied

upon the statement of the reporting officer that Flanigan refused an order to move. Unlike the

UDC, the Court is in no position to assess the credibility of the reporting officer or of Flanigan's

testimony that he was injured and therefore unable to safely comply. Because the UDC

possessed "some evidence" to conclude that Flanigan committed the offense, there was no due process violation.

Flanigan asserts that he did not receive notice of the charges until approximately 26 hours after the incident, contrary to BOP policy. [R. 1 at 18.] The policy to which Flanigan refers states:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

28 C.F.R. § 541.15(a); BOP Program Statement 5270.07, Ch. 6, §1(a). Flanigan's argument fails for two reasons. First, the rule requires BOP staff to provide the inmate with a written copy of the charge "***ordinarily*** within 24 hours" after the incident. By prefacing this time period with the term "ordinarily," the rule contemplates certain situations where it will take longer to deliver the notice, such as where the prisoner is transferred to another cell block or institution, or where staff are simply busy. The 24-hour period set forth in the rule is an aspiration, not a mandate. *Booth v. Patton*, No. 08-02-HRW (E.D. Ky. 2008) (slip op. of June 10, 2009 at pp. 3-4). Even if the rule stated that notice of the charges must always be provided within 24 hours, failure to comply with that administrative rule does not state a constitutional claim, because the requirements of the Due Process Clause are defined by the United States Constitution, not by an agency's internal regulations. *Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004). Nor does a prisoner have a protectible due process liberty interest in the notice provided by 28 C.F.R. § 541.15(a). *Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011). The record establishes that Flanigan received written notice of the charges more than 24 hours before the UDC hearing, and

14

the Due Process Clause does not require more. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

On the morning of April 25, 2007, officer Carter was in the process of closing the slot in Flanigan's cell through which food trays are passed, when Flanigan abruptly pushed the tray slot door down, keeping the slot open, and pushed his arm through it. When Carter ordered Flanigan to remove his arm from the slot so that it could be closed, Flanigan swore at him and refused. Flanigan was issued Incident Report 1592364 charging him with Interfering with a Staff Member in the Performance of their Duties (a Code 198 offense), Refusing to Obey an Order from any Staff Member (a Code 307 offense), and Insolence Towards a Staff Member (a Code 312 offense). [R. 1 at 8.] On June 11, 2007, a DHO held a hearing on the charge, and found Flanigan guilty of only the insolence charge, and ordered GCT forfeit. [R. 1 at 9; R. 1-1 at 4.]

Flanigan appealed that decision on June 28, 2007, by filing a Form BP-230 with SERO, which was assigned Remedy ID 458630. [R. 1 at 12] Flanigan argued that a review of the surveillance video would have exonerated him, because it would show that he was putting his hands in front of him to enable the officers to place handcuffs on his wrists. However, his staff representative was told that the tape had been recorded over and was therefore not available. Flanigan also complained that he did not receive 24 hours notice of the DHO hearing. [R. 1-1 at 3R. 1 at 12, 19.] SERO denied his appeal on August 14, 2007. [R. 1 at 12.] On August 31, 2007, Flanigan appealed to the BOP's Central Office, which denied the appeal on November 30, 2007. The Central Office concluded that DHO's decision to afford greater weight to the statements of the reporting officer was reasonable, and noted that Flanigan was told on May 1, 2007 that a DHO hearing would be held, more than a month before the June 11, 2007 hearing.

15

[R. 1-1 at 3, 4.]  In his petition, Flanigan challenges only the BOP's failure to preserve the surveillance videotape and its resulting unavailability as evidence at the hearing.  [R. 1 at 19.]

As previously noted, the absence of a videotape from surveillance cameras did not deprive Flanigan of the means to marshal a defense or preclude the DHO from finding sufficient evidence to support the charge.  *Gonzalez v. Deboo*, No. 1:08CV104, 2009 WL 1139556, at *4 (N.D. W. Va. Apr. 8, 2009); *Neal v. Casterline*, 129 Fed. App'x 113 (5th Cir. 2005).  Officer Carter testified as to Flanigan's actions, testimony the DHO found credible and in support of the charge.  Because that testimony constitutes "*any* evidence in the record that *could* support the conclusion reached by the disciplinary board," Flanigan's conviction was supported by "some evidence" in compliance with the Due Process Clause.  *Hill*, 472 U.S. at 455-56.

In addition, in his appeals to SERO and the Central Office, Flanigan's challenged the absence of the videotape because it would "attest to my innocence of forcing open the tray slot." [R. 1-1 at 3.]  However, the record does not indicate that Flanigan was found guilty of the charge of Interfering with a Staff Member, but only the Insolence charge.  Flanigan has never claimed, during his administrative appeals or before this Court, that the videotape would have exonerated him of that charge.  Its absence is therefore simply immaterial to the validity of the one charge of which he was found guilty.  *See Jones v. Cross*, 637 F.3d 841, 848-49 (7th Cir. 2011).

On October 17, 2007, officer Howard ordered Flanigan to permit him to handcuff him so that his cell could be opened and a new cellmate placed in the cell, but Flanigan repeatedly refused to do so.  Flanigan was charged with Refusing to Accept a Program Assignment (a Code 306 offense) in Incident Report 1658258.  [R. 1-2 at 6.]  On October 22, 2007, a DHO held a

hearing on the charge, found Flanigan guilty, and imposed sanctions including the loss of GCT. [R. 1 at 10.]

Flanigan appealed that decision by filing a Form BP-230 with SERO on November 6, 2007, which was assigned Remedy ID 472819.  In his appeal, Flanigan asserted that neither he nor officer SIA McLafferty, a witness requested by Flanigan, was permitted to attend the DHO hearing.  SERO denied Flanigan's appeal on December 3, 2007.  [R. 1at 14, 19-20.]

On December 19, 2007, Flanigan appealed to the Central Office.  Flanigan contended that, while the DHO report indicated that officer McLafferty testified at the hearing, McLafferty could not have attended the DHO hearing, which was held at 7:40 a.m., because prison logs showed that he did not arrive at the SHU until 1:10 p.m.  Flanigan also stated that at the time of the incident, "I asked the officer where was the inmate from that he wanted to place in my cell. He wouldn't tell me so fearing for my safety, I refused."  Flanigan explained that placing an inmate in his cell from another state had previously "almost led to an altercation."  [R. 1-1 at 18.] The Central Office denied his appeal on February 27, 2008,  finding that the evidence supported the conclusion that Flanigan disobeyed a direct order, and noting that "[he] elected not to participate in the DHO Hearing and a Waiver of Appearance Form was completed.  Two staff members verified [his] refusal to attend the DHO Hearing as is evidenced by their signatures on the form."  [R. 1-1 at 19.]

To the extent Flanigan challenges the sufficiency of the evidence to support the charge, his admission that he refused a direct order from a staff member provided the DHO with "some evidence" to support it.  While Flanigan may have acted out of a concern that a conflict might arise with his new cellmate, decisions regarding placement of prisoners are left to the discretion

17

of prison officials (*Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979)), and a prisoner is not entitled to violate prison rules because he disagrees with the exercise of that discretion. *Cf. Smith v. Rios*, No. 08-203-ART, 2009 WL 129790, at *2 (E.D. Ky. Jan. 20, 2009) (where prisoner has admitted committing conduct giving rise to disciplinary infraction, his contention that his actions were necessitated by the prison environment cannot support claim for violation of due process rights).

Flanigan also asserts that neither he nor officer McLafferty were permitted to attend the hearing, notwithstanding the DHO's statement that McLafferty was present and gave testimony. The procedural due process protections outlined in *Wolff* require that a prisoner be allowed to present evidence in his or her defense, but it does not require that the prisoner be allowed to do so in person. Nor is a prisoner entitled to present evidence that is cumulative, irrelevant, or that in any way places institutional security in peril. *Wolff*, 418 U.S. at 563-66. Flanigan alleged that after he refused officer Howard's order, "I asked to speak to Mr. McLafferty, because I wanted to be sure they did not place an inmate from South Carolina and I'm from New York. This happened previously and it almost led to an altercation. Mr. McLafferty said it was his fault, that he should have had a seperatese." [R. 1-1 at 18.] Even if McLafferty had not been allowed to testify, the exclusion would have been warranted for lack of relevance. Flanigan admitted that he had refused Howard's order, but sought testimony from McLafferty in an effort to justify that violation. While a DHO may consider such an argument, he or she is not constitutionally required to do so. *Smith*, 2009 WL 129790, at *2. In addition, because Flanigan admitted that he committed the offense conduct, no constitutional violation would have resulted from even an erroneous exclusion. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (applying harmless error review to habeas challenge to prison disciplinary sanction, such that "a prisoner

cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony 'would have affected the outcome of his case.'")

On October 22, 2007, officer Blackwelder came to Flanigan's cell to retrieve him and his cellmate for recreation. After his cellmate left the cell, Flanigan prevented Blackwelder from closing the cell by putting his arm into a slot. Blackwelder ordered Flanigan to remove his arm, which he refused to do, instead demanding to see officer McLafferty. Flanigan was charged with refusing to obey an order (a Code 307 offense) in Incident Report 1658264. [R. 1-2 at 2.] On November 14, 2007, a DHO held a hearing and found Flanigan guilty of the infraction. [R. 1 at 10.]

On November 25, 2007, Flanigan challenged that finding to SERO, and his appeal was assigned Remedy ID 475526. Flanigan asserted that the DHO prevented his staff representative from asking the questions he had prepared, and instead questioned the witnesses herself. She also told Flanigan not to speak, and ultimately removed him from the hearing entirely. Flanigan further alleged that the DHO mischaracterized the testimony of several witnesses. Finally, Flanigan asserted that because the DHO was present in the SHU when the incident occurred, she had direct knowledge of the underlying facts and was therefore not impartial. [R. 1-1 at 14.] SERO responded on January 8, 2008, and noted that while Flanigan's staff representative was permitted to ask many questions, the DHO explained that others which were not relevant to the charges would not be permitted. The DHO's response also stated that Flanigan was physically present during the hearing and was permitted to ask certain questions, and that the DHO did not witness the incident or play any role in the charges being filed, and was therefore not partial. [R. 1-1 at 15.]

19

Flanigan appealed this decision to the BOP's Central Office on February 2, 2008, on the same grounds previously asserted. [R. 1-1 at 16.] On March 21, 2008, the Central Office denied the appeal. In doing so, the Central Office noted that the questions Flanigan was prevented from asking did not relate to the charge for disobeying an order, but to Incident Report 1651899 for interfering with security, and were therefore not relevant. The Central Office also noted that the log books for the SHU established that the DHO had left the segregation unit more than 30 minutes before the incident, and thus could not have witnessed it, and was therefore unbiased. [R. 1-1 at 17.]

In his petition, Flanigan argues that the DHO prevented his staff representative from questioning McLafferty regarding whether he was to be separated from South Carolina inmates. [R. 1 at 19-20] As with the prior incident, the DHO properly excluded this requested testimony as irrelevant to determining whether Flanigan refused an order to remove his arm from the cell slot. *Smith*, 2009 WL 129790, at *2; *see also Perotti v. Marberry*, 355 Fed. App'x 39, 42 (7th Cir. 2009) (prisoner's inability to question witnesses to bolster self-defense claim did not impair his ability to present a defense to disciplinary charge because there is no right to self-defense in a prison setting and evidence established prisoner went on the offensive after initial attack).

On January 27, 2008, Flanigan informed officer Dumais that the lunch he had been served in his cell was cold. Dumais offered to reheat it for him, but Flanigan stated he wanted a new entree. When Dumais indicated he could only reheat it for him, Flanigan walked to his bunk without saying anything. When Dumais returned 15 minutes later to collect Flanigan's food tray, Flanigan placed it in the slot, but refused to let go of it, preventing Dumais from either collecting the tray or closing the food tray slot. Dumais repeatedly ordered Flanigan to surrender

20

the tray, which he refused to do.  Flanigan was charged with Tampering with and Blocking any

Locking Device (a Code 208 offense), Interfering with Staff in the Performance of their Duties (a

Code 298 offense), and Refusing an Order of any Staff Member (a Code 307 offense) in Incident

Report 1693192.  [R. 1-2 at 11.]

On April 4, 2008, a DHO hearing was held on the charges.  [R. 1 at 10.]  At the hearing,

Flanigan asserted that once his entree had been opened, it should not have been reheated but

replaced pursuant to food service policy.  The DHO found that Flanigan refused to obey a staff

order, and found him guilty of the Code 307 offense, but dismissed the other charges.  The DHO

sanctioned Flanigan with the loss of commissary privileges for three months and placement in

disciplinary segregation for 15 days.  [R. 1-1 at 22-25.]

On April 7, 2008, Flanigan appealed that decision in Remedy ID 489737, asserting that

he only refused to return the entree, not the tray, that the DHO failed to consider testimony from

the food service officer regarding proper policy, and that he could not have blocked the tray slot

while sitting at his bunk.  SERO denied that appeal on May 19, 2008.  [R. 1 at 14.]  Flanigan

appealed to the BOP's Central Office on May 19, 2008, asserting the same grounds.  [R. 1-1 at

20]  On July 15, 2008, the Central Office denied Flanigan's appeal, finding that the DHO's

decision was supported by the reporting officer's written statement in the incident report.  [R. 1-1

at 21]

In his petition, Flanigan asserts that the DHO failed to consider the statements of the food

service officer regarding proper policy, and that it was physically impossible for him to be

holding open the food tray while sitting at his bunk.  [R. 1 at 21.]  Flanigan appears to be

challenging the sufficiency of the evidence to support the disciplinary conviction.  However,

because the DHO did not order any GCT forfeited, but only suspended commissary privileges and ordered 15 days in disciplinary segregation, the procedural due process protections articulated in *Wolff* simply do not apply.  Inmates do not have a due process interest in commissary privileges.  *Mitchell v. Caruso*, No. 1:05-CV-728, 2007 WL 603399, at *7 (W.D. Mich. Feb. 22, 2007) (collecting cases); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Furthermore, being required to spend 15 days in segregation does not "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Even if this were not so, Flanigan's proferred explanation for refusing to obey the officer's order in light of food service regulations does not justify his actions or excuse the violation.  *See Smith*, 2009 WL 129790, at *2.  Flanigan's argument that standing at his bunk at 12:15 somehow prevented him from blocking the food slot at 12:30 [R. 1-2 at 11; R. 1 at 20] is without merit, and the DHO was presented with ample evidence to support the charge that he refused to obey a direct order.  Because the record contains evidence in the record "that *could* support the conclusion reached by the disciplinary board" (*Hill*, 472 U.S. at 455-56), no due process violation occurred.

On June 16, 2008, officer Bryant ordered Flanigan to permit hand restraints to be applied so that he could be moved to another cell.  When Flanigan refused, he was charged with Refusing to Obey an Order (a Code 307 offense) in Incident Report 1744956.  [R. 1-2 at 9]  A DHO hearing was held on the charge on July 29, 2008, and the DHO found Flanigan guilty of the offense, ordered the loss of phone privileges, and imposed disciplinary segregation.  [R. 1 at 9.]

22

On August 6, 2008, Flanigan appealed this decision to SERO in Remedy ID 504291. Flanigan argued that he did not refuse to move but only asked to be placed in a different cell, and that he did not receive a copy of the incident report within 24 hours as required by BOP policy. SERO denied his appeal on August 27, 2008. [R. 1 at 5.] Flanigan then appealed to the BOP's Central Office on September 9, 2008, asserting essentially the same grounds for relief. [R. 1 at 32.] On December 15, 2008, the Central Office denied the appeal. [R. 1 at 33.]

In his petition, Flanigan asserts that he was not given notice of the charges against him until 33 hours after the incident, which is more than the 24 hours permitted by BOP policy. [R. 1 at 18.] As previously discussed, 28 C.F.R. § 541.15(a) requires BOP staff to give the inmate a copy of the incident report "***ordinarily*** within 24 hours." Providing notice after that point does not violate the rule, or the prisoner's due process rights. *Jones v. Cross*, 637 F.3d at 846.

## II.

Finally, Flanigan has filed a motion requesting an injunction from this Court directing prison staff not to place him in the general population, where he fears he will be hurt or killed. [R. 28] Challenges to a prisoner's classification or place of confinement are "conditions of confinement" claims which may not be pursued in habeas. Relief must be sought under the civil rights laws. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Flanigan's motion will therefore be denied.

## III.

Accordingly, **IT IS ORDERED** as follows:

1.      Petitioner's motion for injunctive relief [R. 28] is **DENIED**;

2.      Petitioner's petition for a writ of habeas corpus [R. 1] is **DENIED**; and

23

3.      The Court will enter an appropriate judgment.

This the 20th day of October, 2011.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**